IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARY LAROCHELLE, et al.    :
                            :
         Plaintiffs,        :
                            :  CIVIL ACTION
     v.                     :
                            :  12-CV-5567
WILMAC CORPORATION, et al.  :
                            :
         Defendants.        :

**MEMORANDUM**

**STENGEL, J.**                                    **October 21, 2016**

**I.   INTRODUCTION**

This is an employment discrimination case. Presently before me is Plaintiffs' motion for reconsideration in part. This motion concerns my previous opinion and order in which I granted in part and denied in part the Defendants' motions for summary judgment. LaRochelle v. Wilmac Corp., --- F. Supp. ---- 3d, 2016 WL 5404474 (E.D. Pa. Sept. 27, 2016) [hereinafter "the summary judgment opinion"].

**II.  LEGAL STANDARD**

"The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985)). "The scope of a motion for reconsideration . . . is extremely limited." Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011). A court deciding a motion for reconsideration may alter or amend a judgment "if the party

1

seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café, 176 F.3d at 677 (citing N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly. Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

## III. DISCUSSION

Plaintiffs' motion for reconsideration is two-fold. On one hand, it merely seeks clarification of certain aspects of the summary judgment opinion and order. On the other, it challenges some of my substantive findings. I will address each of these two aspects of the motion in turn.

### A. Clarification

As to the first aspect of the motion, Plaintiffs seek clarification of the summary judgment opinion and order with respect to the interplay between Section 1981, Title VII, and the PHRA. In the opinion, I denied the Defendants' motions for summary judgment on some of LaRochelle, Vasquez, and Shearer's retaliation claims. As for LaRochelle, I found that "there is a genuine dispute of material fact as to whether LaRochelle's complaints about harassment were linked to her termination." LaRochelle, 2016 WL 5404474, at *24. LaRochelle's complaints involved allegations of racial and sexual harassment. Id. at *1–2, 23–24. In the opinion, as required per law, I viewed the Title VII

and Section 1981 race retaliation claims under the same analysis. Id. at *23 n.29, 24 (citing CBOCS West, Inc. v. Humphries, 553 U.S. 442, 457 (2008)); see, e.g., Doe v. Apria Healthcare Group Inc., 97 F. Supp. 3d 638, 646 (E.D. Pa. 2015) ("In CBOCS West, the Supreme Court held that § 1981 encompasses retaliation claims. . . .Therefore, the Court's analysis proceeds as it would for a Title VII retaliation claim."). I also explained in the summary judgment opinion that, per the law, I would view the PHRA claims under the same analysis as the Title VII claims. LaRochelle, 2016 WL 5404474, at *7 n.9. Thus, when I denied summary judgment on LaRochelle's Title VII retaliation claim for reporting sexual and racial harassment, naturally, the parallel retaliation claims under Section 1981 (for race) and the PHRA (for both sex and race), also survived summary judgment.[1]

---

[1] Although this seemed self-evident from the summary judgment opinion, Plaintiffs' present motion displays some confusion on this point. Plaintiffs' lack of clarity here is a problem of their own making. In pleading their individual claims, Plaintiffs did not separate each claim into separate counts (*e.g.*, Count I: Retaliation under the ADA; Count II: Retaliation under Section 1981; and so forth). Instead, Plaintiffs averred a myriad of jumbled facts and then simply stated the laws under which they were bringing their claims, making no connection between the two. The incoherence of the Plaintiffs' pleading carried over into their briefing. This overarching lack of clarity presented the court with the burden (which is really the Plaintiffs' job) of sifting through the claims to parse out which factual averments and evidence applied to which legal basis for the claims. To be sure, the court's willingness to do the Plaintiffs' litigating for them was not required. See Doebler's Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in the record."); Thomas v. United Parcel Serv., Inc., Civ. Action No. 07–5607 (JLL), 2010 WL 3636230, at *5 (D.N.J. Sept. 9, 2010) ("As a preliminary matter, the Court notes, again, that Plaintiff fails to specify which discrete acts . . . form the basis of this particular claim. Neither the Court nor Defendant should be required to sift through a tome of allegations to piece together Plaintiff's claims."). Due to these briefing and pleading deficiencies, in the summary judgment order, I was not able to simply grant or deny the claims by "count," as is ordinarily done. Rather, I was forced to explain the substantive basis of each claim for which summary judgment was denied. With this in mind, it should have been clear to Plaintiffs that when I denied summary judgment on the Title VII retaliation claim, it necessarily followed that summary judgment was denied on the accompanying PHRA and Section 1981 claims. I explained this in the summary judgment opinion and it has been a matter of common knowledge in employment discrimination cases for decades. See, e.g., Wyatte v. Consol. Rail Corp., Civ. A. No. 90–8055, 1992 WL 331500, at *4 (E.D. Pa. Nov. 2, 1992) ("Since the analysis under Title VII is the same as the analysis under the PHRA, we will necessarily address the merits of the PHRA claim in our discussion of the Title VII claim."); Plummer v. Aman, Civ. Action No. 80–3676. 1984 WL 1346, at *3 (E.D. Pa. Oct. 16, 1984) ("Thus the jury's determination of the section 1981 claim necessarily decided all the essential elements of the Title VII race discrimination claim."). This issue is not one properly addressed through a motion for reconsideration because there is nothing really for the court to reconsider. Nonetheless, in the interest of

The same goes for plaintiff Vasquez's Title VII retaliation claim and plaintiff Shearer's ADA retaliation claim. When I denied summary judgment on Vasquez's Title VII claim, it necessarily followed that her parallel PHRA claim (based on the same exact allegations under the same analysis) also survived summary judgment. As for Shearer's ADA retaliation claim, because PHRA claims are viewed under the same analysis, Solomon v. Sch. Dist. of Phila., 882 F. Supp. 2d 766, 785 n.30 (E.D. Pa. 2012); Kaniuka v. Good Shepherd Home, Civ. Action No. 05–CV–2917, 2006 WL 2380387, at *8 n.9 (E.D. Pa. Aug. 15, 2006), when I denied summary judgment on Shearer's ADA retaliation claim, it necessarily followed that her parallel PHRA claim survived summary judgment. I explained in the summary judgment opinion that a retaliation claim is identically analyzed whether under Title VII or the ADA. LaRochelle, 2016 WL 5404474, at *26, 28. I also explained, as stated above, that claims under Title VII are analyzed the same as claims under the PHRA. Id. at 7 n.9. Thus, it goes without saying that when Shearer's ADA retaliation claim survived summary judgment, so did her PHRA claim based on the same allegations.

B. **Substantive Findings**

The discussion above addresses the portion of Plaintiffs' motion for reconsideration that seeks clarification. In this section I will address Plaintiffs' challenges to my substantive findings. None of these challenges has merit and I will deny Plaintiffs' motion for reconsideration.

---

clarity, I will spell out the survival of LaRochelle's PHRA and Section 1981 retaliation claims in an accompanying order to this opinion.

A motion for reconsideration is "not to be used as an opportunity to relitigate the case," but "only to correct manifest errors of law or fact or to present newly discovered evidence." Blystone, 664 F.3d at 415. Plaintiffs have not presented any new evidence. Instead, they simply disagree with my findings and wish to relitigate them through a motion for reconsideration. For example, in the summary judgment opinion, I found that LaRochelle's race-based harassment claim under Section 1981 failed because LaRochelle was unable to point to a clear pattern of incidents of racial harassment. LaRochelle, 2016 WL 5404474, at *21. Plaintiffs contend this decision was an error of law, but they do not cite to any record evidence or case law in support.[2] Plaintiffs point to the factual discussion of the summary judgment opinion in which I noted one of LaRochelle's co-workers made a racial comment to her in September 2010, which she reported before her termination. Plaintiffs did not address this September comment in briefing LaRochelle's race-based harassment claim under Section 1981. (Doc. No. 84-1 at 16–19). Consequently, I did not consider this isolated September 2010 comment in that claim. Most important, however, Plaintiffs' reconsideration motion ignores that I did consider this September 2010 comment in conjunction with LaRochelle's retaliation claim. Indeed, I relied on the proximity between the complaints of these comments and LaRochelle's termination in denying summary judgment on the retaliation claim. Simply put, Plaintiffs do nothing to call into question my original finding that LaRochelle's

---

[2] Plaintiffs mistakenly cite to the Vance v. Ball State University, 133 S. Ct. 2434 (2013) decision. (Doc. No. 115-2 at 8). The Vance case was only relevant to an entirely unrelated claim having nothing to do with LaRochelle's race-based harassment claim under Section 1981.

Section 1981 claim for race harassment did not establish a coherent evidentiary pattern of incidents sufficient to withstand summary judgment.

Plaintiffs also challenge the granting of summary judgment on LaRochelle's and Riker's sex-based harassment claims under Title VII. In doing so, however, Plaintiffs do not cite to a single case, piece of evidence, affidavit, or other document. Instead, they take issue with my findings simply by disagreeing with them in a conclusory fashion. This is certainly not sufficient to warrant reconsideration. See, e.g., Womack v. Smith, Civ. Action No. 1:06–CV–2348, 2010 WL 569566, at *1 (M.D. Pa. Feb. 12, 2010) ("[A] party may not invoke a motion for reconsideration as a means to relitigate matters of disagreement with the court or to raise stale arguments anew").[3] The summary judgment opinion contained a robust legal discussion on remedial action and investigations in the context of hostile work environment claims. Plaintiffs' motion for reconsideration does not question this legal discussion nor does it challenge any of the cases I relied on.

Next, Plaintiffs challenge my finding on Riker's retaliation claims under Title VII and the ADA. I granted summary judgment on both of these claims for the same two reasons: (1) Riker did not suffer an adverse employment action because she voluntarily resigned; and (2) Riker could not establish a causal connection. LaRochelle, 2016 WL 5404474, at *28–31. Regarding Riker's resignation, plaintiffs do not offer any new evidence—or cite to a single case—in arguing that my finding was an error of law. Indeed, they do not dispute that Riker resigned voluntarily, signed a resignation letter,

---

[3] Plaintiffs attached, as exhibits, general EEOC guidelines on harassment. (Doc. No. 115-2 at 10). Plaintiffs then go on to state that there are disputed questions of fact on these claims. However, as noted above, Plaintiffs do nothing to support this vague allegation with case law, new evidence, or even old evidence.

6

was represented by counsel at the time, and was provided an opportunity to ask the Workers' Compensation Judge, her own lawyer, and Defendants' lawyer, questions about the resignation. Plaintiffs merely reargue the evidence presented before me at summary judgment, but offer no new legal argument. This is no basis for a reconsideration.[4]

Plaintiffs also challenge the granting of summary judgment on plaintiff Shearer's national-origin hostile work environment claim. Plaintiffs cite to a district court decision about an African-American plaintiff being terminated. This is the only case they rely on in rearguing that there is a genuine issue of material fact with this claim. I relied on Supreme Court and Third Circuit precedent in arriving at a conclusion regarding Shearer's national-origin hostile work environment claim. Simply because Plaintiffs cite to a single unrelated district court case does not mean that I committed an "error of law" with respect to this claim. In the same vein, Plaintiffs attempt to relitigate my finding on "Shearer's termination." However, they do not indicate which claim they are challenging. Either way, the summary judgment opinion explained in detail my finding and legal analysis on this issue. LaRochelle, 2016 WL 5404474, at *9–11. Accordingly, there is no error of law on this point and Plaintiffs cannot establish one simply by relitigating the issue.

The last point of law that Plaintiffs challenge is my finding on Riker's and Shearer's common law wrongful discharge claims. Plaintiffs rely exclusively on one

---

[4] Plaintiffs rely on Lupyan v. Corinthian Colleges Inc., 761 F.3d 314 (3d Cir. 2014) in an attempt to rebut my finding that Riker's reliance on self-serving affidavits was problematic to her *prima facie* retaliation case. However, Lupyan did not deal with the burden of proving a *prima facie* case. On the contrary, Lupyan specifically dealt with Federal Rule of Evidence 301, which addresses the sufficiency of the evidence needed to rebut a presumption. My finding on Riker's retaliation claim had to do with her prima facie case—not rebutting any presumption. Accordingly, Plaintiffs' reliance on Lupyan is misplaced. Either way, the affidavits Riker relied on do not eliminate the undisputed fact that she voluntarily resigned.

Pennsylvania Commonwealth Court case, arguing that this case came to a different conclusion than I did regarding what constitutes "protected activity" for purposes of a wrongful discharge claim based on filing a Workers' Compensation claim. There are two problems with this argument. First, Plaintiffs never relied on this case or made any argument regarding the case at the summary judgment stage. Second, choice of law jurisprudence is clear that, in the absence of any clear precedent from a state's "highest" court, a federal district court must predict how the state's "highest" court would act. Hunt v. U.S. Tobacco Co., 538 F.3d 217, 220–21 (3d Cir. 2008). In arriving at my decision, I relied on competing views of federal district courts and Pennsylvania courts regarding how the Pennsylvania Supreme Court would interpret this issue. The Pennsylvania Supreme Court has not yet ruled on this issue. Therefore, Plaintiffs' after-the-fact citation to a single Commonwealth Court case does not indicate that I committed errors of law by relying on a wide range of other cases that have also interpreted this issue. Certainly, if the Pennsylvania Supreme Court had ruled on this issue, I would be bound to follow that holding. Hunt, 538 F.3d at 220–21. But they have not. Therefore, Plaintiffs' argument here is not persuasive.

## IV. CONCLUSION

For all the foregoing reasons, I will deny Plaintiffs' motion for reconsideration in part. In an accompanying order, I will provide clarification on the matters discussed in part III.A of this memorandum opinion.